## HAWKINS v. WARD.

---

PATENTS; INTERFERENCE; DILIGENCE.

The junior party to an interference, who was the first to conceive, disclosed the invention about May 25, 1907, and filed his application November 29, 1907. The senior party disclosed about June 15, 1907, and filed July 22, 1907. Neither party actually reduced to practice. The delay of the junior party in filing his application after disclosure was in large part caused by his making an investigation in the Patent Office to determine whether the invention would be an infringement upon any prior existing patent. It was held that such investigation did not constitute a proper excuse for delay; and that he was lacking in diligence,—there being no distinction between delay for the purpose of ascertaining whether there is infringement, and delay for mere business purposes of exploiting an invention before making an application.

No. 723. Patent Appeals. Submitted November 15, 1911. Decided January 2, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are stated in the opinion.

*Mr. Albert G. Davis, Mr. Arthur A. Buck,* and *Mr. George E. Cruse* for the appellant.

*Mr. Samuel M. Ward, Jr.,* the appellee, appeared in proper person, and with him was *Mr. Spencer B. Prentiss.*

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference proceeding. The issue of the interference is as follows:

"1. In a block-signaling system, the combination of a step-by-step controller at each end of the block, one of which is operated a step forward and backward respectively in response to each car entering and leaving the block in a given direction, a danger signal set in response to the first forward movement of said controller and cleared by its last return movement, a signal set at the entering end of the block in response to the setting of said danger signal, danger and caution signals similarly arranged with respect to the other controller and governed thereby in response to cars entering and leaving the block in the opposite direction, two line wires only extending along the block for controlling and operating said signals, and means including a switch for causing an indication of the movement of the operating controller to be given each following car entering the block after the signals are set.

"2. In a signaling system, the combination of step by step controllers, one at each end of a block, one of said controllers operated a step forward and backward respectively in response to cars entering and leaving the block in one direction, a danger signal set when said controller assumes its first forward movement and cleared when the controller is restored, the other step-by-step controller similarly operated in response to cars entering and leaving the block in the other direction, a danger signal similarly set by said controller, a single line wire for controlling the setting of either of said signals, and a signal set in response to the setting of one of said danger signals for indicating to the first car of a series the setting of said danger signal.

"3. In a block-signaling system, the combination of a step-by-step controller at each end of the block, one of which is op-

erated a step forward and backward respectively in response to each car entering and leaving the block in a given direction, a danger signal at one end of the block set in response to the first forward movement of said controller and cleared in response to its last backward movement, a signal at the entering end set in response to the setting of the danger signal, means for causing an indication to be given each subsequent car to show the forward movement of its signal controller, signals and circuits similarly arranged and controlled by the other step-by-step controller in response to cars entering and leaving the block in the opposite direction, and a common line circuit for controlling the setting of the danger signals.

"4. In a block-signaling system, a signal circuit extending along the block, signal-setting means at one end controlled through said circuit by the first car of a possible series entering the block for setting a signal at that end, a signal at the other end controlled through said circuit by the setting of the first signal, and a switch operated in advancing the controller and controlled by the entry of each succeeding car of the series for causing an indication of the controller movement to be given each of said cars without affecting said first signal."

It appears from the record that appellant, Lawrence A. Hawkins, disclosed the invention about May 25, 1907, and filed his application on November 29, 1907. Appellee, Samuel M. Ward, Jr., disclosed it about June 15th, and filed his application on July 22, 1907. Neither party reduced the invention to practice. It is conceded that appellant was the first to conceive and disclose the invention.

The sole question, therefore, is whether appellant exercised due diligence toward reducing the invention to practice. It appears from the record that appellant is an engineer and patent attorney in the employ of the General Electric Company, the assignee of his application. It may, therefore, be presumed that he is skilled in the art to which this invention belongs, as well as the practice in procuring patents. It appears that a large part of the time between the date of disclosure and the date of filing his application in the Patent Office was con-

sumed in making an investigation to determine whether or not this invention would be an infringement upon any prior existing patent. It is contended that such investigation constitutes a proper excuse for delay. With this contention we cannot agree. We see no distinction between delay for the purpose of ascertaining whether or not there is infringement, and delay for the mere business purpose of exploiting an invention before making application for patent. In neither case does this furnish a valid excuse.

It does not affect the patentability of a novel device that it may, perchance, have to pay tribute to some dominating patent. This is merely a question between the pioneer inventor and the one who conceives the improvement. The latter is not entitled to withhold his improvement from the public until he may manufacture free from the claims of earlier inventors, and then secure a monopoly for the full period allowed by the patent laws. Neither is he entitled to delay the completion of his invention pending an examination into the prior art for the purpose of discovering dominating patents, in order to determine whether it should seem advisable to him to modify his invention so as not to come within the scope of such earlier patents. This is what appellant did here, for in his testimony he says, I "felt reasonably sure that Mr. Fairfax was not going to find any patents which would force us seriously to modify the system." It can hardly be contended that actions which might result in the modification of the invention in issue constitute diligence in reducing this system to practice.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.                                        *Affirmed.*